UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| In re: | Case No. 22-10698-SLM |
|---|---|
| **CARL JOSEPH BRAUNAGEL,** | Hon. Stacey L. Meisel |
| Chapter 11 Debtor. | Chapter 11 (Subchapter V. Small Business) |

### SMALL BUSINESS DEBTOR'S PLAN OF REORGANIZATION

This Plan of Reorganization is presented to you to inform you of the proposed Plan for restructuring the debt of Carl Joseph Braunagel, and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY _____, 2022.**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY _____, 2022. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS: MIDDLEBROOKS SHAPIRO, P.C., 841 MOUNTAIN AVENUE, FIRST FLOOR, SPRINGFIELD, NJ 07081.**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR _____, 2022 IN COURTROOM NO. 3A AT THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY, NEWARK VICINAGE, 50 WALNUT STREET, 3RD FLOOR, NEWARK, NJ 07102.**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

April 28, 2022

Joseph M. Shapiro, Esq.
Middlebrooks Shapiro, P.C.
841 Mountain Avenue, First Floor
Springfield, NJ 07081
973-218-6877
*jshapiro@middlebrooksshapiro.com*
Counsel for the Chapter 11 Debtor

## TABLE OF CONTENTS

**SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS** ............................ 4

ARTICLE 1 ............................................................................................................. 4

HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR ........................... 4

    **1.1.**   **Nature of the Debtor's Business.** ............................................................. 4

    **1.2.**   **History of Business Operations of the Debtor** ...................................... 4

    **1.3**    **Filing of the Debtor's Chapter 11 Case.** ................................................ 4

    **1.4.**   **Legal Structure and Ownership.** ........................................................... 4

    **1.5.**   **Debtor's Assets.** .................................................................................... 4

    **1.6.**   **Debtor's Liabilities.** .............................................................................. 4

    **1.7.**   **Current and Historical Financial Conditions.** ....................................... 5

    **1.8.**   **Events Leading to the Filing of the Bankruptcy Case.** ......................... 5

    **1.9.**   **Significant Events During the Bankruptcy Case.** .................................. 5

    **1.10.**   **Projected Recovery of Avoidable Transfers** .................................... 5

**ARTICLE 2** ......................................................................................................... 5

**THE PLAN** ......................................................................................................... 5

    **2.1.**   **Unclassified Claims.** ............................................................................. 6

      A.   Administrative Expenses............................................................................. 6

      B.   Priority Tax Claims. .................................................................................... 7

    **2.2**    **Classes of Claims and Equity Interests.** ................................................ 8

      A. Classes of Secured Claims ........................................................................... 8

      B. Classes of Priority Unsecured Claims. ....................................................... 9

      C. Classes of General Unsecured Claims.......................................................... 10

      D. Class of Equity Interest Holders. ............................................................... 11

    **2.3.**   **Estimated Number and Amount of Claims Objections.** ......................... 11

    **2.4.**   **Treatment of Executory Contracts and Unexpired Leases.** ................... 11

    **2.5.**   **Means for Implementation of the Plan.** ................................................ 12

    **2.6.**   **Payments.** ............................................................................................. 12

    **2.7.**   **Post-Confirmation Management.** ......................................................... 12

    **2.8.**   **Tax Consequences of the Plan.** ............................................................ 12

    **2.9. Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan** ...... 12

**ARTICLE 3** ......................................................................................................... 12

**FEASIBILITY OF PLAN** ..................................................................................... 12

   **3.1.**   **Ability to Initially Fund Plan.** ......................................................... 13

   **3.2.**   **Ability to Make Future Plan Payments And Operate Without Further** ............................. 13

   **Reorganization.** ................................................................................................. 13

**ARTICLE 4** ......................................................................................................... 13

**LIQUIDATION ANALYSIS.** ................................................................................ 13

**ARTICLE 5** ......................................................................................................... 13

**DISCHARGE.** ...................................................................................................... 13

**ARTICLE 6** ......................................................................................................... 14

**GENERAL PROVISIONS.** ................................................................................... 14

   **6.1.**   **Title to Assets.** ................................................................................. 14

   **6.2.**   **Binding Effect.** ................................................................................ 14

   **6.3.**   **Severability.** .................................................................................... 14

   **6.4.**   **Retention of Jurisdiction by the Bankruptcy Court.** ....................... 15

   **6.5.**   **Captions.** ......................................................................................... 15

   **6.6.**   **Modification of Plan.** ...................................................................... 15

   **6.7.**   **Final Decree.** .................................................................................. 15

**ARTICLE 7** ......................................................................................................... 15

**ATTACHMENTS** ................................................................................................. 15

**ARTICLE 8** ......................................................................................................... 16

**FREQUENTLY ASKED QUESTIONS** ................................................................ 16

**ARTICLE 9** ......................................................................................................... 17

**DEFINITIONS** .................................................................................................... 17

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

The Debtor proposes a sixty (60) month plan of reorganization funded by the Debtor's projected wage, self-employment, business income, and rental income, as well as by exempt funds. The Debtor proposes annual disbursements to priority and general unsecured creditors. Secured claims will be paid, cured and/or maintained pursuant to the underlying notes. General unsecured creditors will receive annual *pro rata* distributions of the Debtor's disposable household income.

## ARTICLE 1

## HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

**1.1.   Nature of the Debtor's Business.**

The Debtor is an individual. He is a pharmacist with Braunagel & Braunagel, Inc. based in Port Jervis, NY.  The Debtor's non-debtor spouse is a waitress at Goodfellas Pizza Italian Restaurant, Inc. The Debtor receives income from his ownership interests in Goodfellas Pizza Italian Restaurant, Inc., Braunagel & Braunagel, Inc., and Hammertime Enterprises, LLC. The Debtor also operates his real property located in Winter Garden, FL as a residential rental property.

**1.2.   History of Business Operations of the Debtor**

In addition to the Debtor's ownership interests in Goodfellas Pizza Italian Restaurant, Inc., Braunagel & Braunagel, Inc., and Hammertime Enterprises, LLC, the Debtor rents his real property located in Winter Garden, FL to residential tenants.

**1.3   Filing of the Debtor's Chapter 11 Case.**

On January 28, 2022, the Debtor filed a voluntary petition for relief under the Bankruptcy Code. The Chapter 11 case is pending in the Bankruptcy Court in Newark, New Jersey before the Honorable Stacey L. Meisel.

**1.4.   Legal Structure and Ownership.**

The Debtor is an individual.

**1.5.   Debtor's Assets.**

The identity and fair market value of the Debtor's estate's assets, including the source and basis for valuation, are set forth at Exhibit A.

**1.6.   Debtor's Liabilities.**

The secured Claims, priority Claims, and unsecured Claims against the Debtor's estate are set forth at <u>Exhibit B</u>.

### 1.7. <u>Current and Historical Financial Conditions.</u>

The Debtor projects sufficient income and assets to support his reorganization. First, the Debtor has projected disposable monthly income of $3,422.38, as reflected in the Debtor's Schedules I and J, which the Debtor dedicates for a sixty (60) month period under this Plan. The Debtor also has sufficient exempt property available to dedicate to the plan as proposed herein.

### 1.8. <u>Events Leading to the Filing of the Bankruptcy Case.</u>

Prior to commencing this Chapter 11 case, the Debtor was a defendant in the New York Supreme Court cases entitled *Advisory Trust Group, LLC v. Bruanagel & Braunagel, et al.*, EF-006816-2018 and *Peter Falli v. Aliton's Managed Care Pharmacy, Inc., et al.*, EF-009047-2019. As a result of the costs and expenses associated with the protracted state court litigation, the Debtor is reorganizing through his Chapter 11 case pending before this Court.

### 1.9. <u>Significant Events During the Bankruptcy Case.</u>

Significant events during the Debtor's bankruptcy case, include:

- On January 28, 2022, the Debtor's emergency Chapter 11 Petition was filed commencing this case (Docket No. 1).
- On February 14, 2022, the Debtor filed the balance of his Chapter 11 Petition and schedules with this Court (Docket Nos. 16, 20, 21, 22, 23, 24, 25, and 26).

### 1.10. <u>Projected Recovery of Avoidable Transfers</u>

The Debtor has not yet completed his investigation with regard to prepetition transactions. The Debtor anticipates completing his investigation by July 30, 2022. If you received a payment or other transfer of property within ninety (90) days of bankruptcy, the Debtor may seek to avoid such transfer.

### <u>ARTICLE 2</u>
### <u>THE PLAN</u>

The Debtor's Plan must describe how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be

impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled.  If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote.  A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan.  Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan.  A class that is not impaired is deemed to accept the Plan.

### 2.1.  **Unclassified Claims.**

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such, the Plan does not place the following Claims in any class:

A.    Administrative Expenses

The Debtor must pay all Administrative Expenses in full.   If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense.  Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order.  If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1.    If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided.  This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2.    If the Debtor received goods it has purchased in the ordinary course of business within twenty (20) days before the Petition Date, the value of the goods received is an Administrative Expense.

3.    Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of

the Chapter 11 cases.  These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | $0.00 | N/A |
| Administrative Tax Claim | $0.00 | N/A |
| The value of goods received in the ordinary course of business within twenty (20) days before the Petition Date | $0.00 | N/A |
| Professional fees, as approved by the Bankruptcy Court | $30,000.00 | After Bankruptcy Court approval, payment to be made in full within thirty (30) days of entry of the Confirmation Order using exempt assets. |
| Clerk's Office fees | $0.00 | Paid in full on the Effective Date. |
| Other Administrative Expenses | $0.00 | N/A |
| Trustee | $5,000.00 | Upon application under § 330 and after Bankruptcy Court approval, payment to be made in full within thirty (30) days of entry of the Confirmation Order using exempt assets. |
| **TOTAL** | **$35,000.00** | |

B.     Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.  Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding five (5) years from the order of relief. Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| State of New Jersey, Division of Taxation | $10,709.33 (Claim 6-1) | Assessments for 2019 and 2020 | Payment Interval = Annual<br>Begin Date = 05/15/2023<br>End Date = 05/15/2028<br>Interest Rate % = 0.00<br>Annual Payment = $2,141.87<br>Total Payment = $10,709.33 |

**2.2**    **Classes of Claims and Equity Interests.**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

A.  Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code.  If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to § 1190(3) of the Code as set forth below, if applicable.

The following chart lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impaired? | Treatment |
|---|---|---|---|---|
| 1 | **Secured claim of:**<br>**Name =**<br>JPMorgan Chase Bank, N.A. (Claim 5-1)<br><br>**Collateral description =**<br>68 River Road<br>Montague, NJ 07827<br><br>**Allowed Secured Amount =**<br>$106,714.04<br><br>**Priority of lien =**<br>First<br><br>**Principal owed =**<br>$106,714.04<br><br>**Pre-pet. arrearage =**<br>$0.00<br><br>**Total claim =**<br>$106,714.04 | No | No | **Monthly Payment** = $1,938.67<br>**Interest Rate %** = 2.24<br>**Lien Treatment** = Unaffected<br>**Arrearage** = $0.00<br>**Arrearage Treatment** = N/A |
| 2 | **Secured claim of:**<br>**Name =** | No | No | **Monthly Payment** = $798.24<br>**Interest Rate %** = 4.75% |

| | | | | |
|---|---|---|---|---|
| | JPMorgan Chase Bank, N.A.<br><br>**Collateral description =**<br>68 River Road<br>Montague, NJ 07827<br><br>**Allowed Secured Amount =**<br>$38,104.18<br><br>**Priority of lien =**<br>Second<br><br>**Pre-pet. arrearage =**<br>$0.00<br><br>**Total claim =**<br>$38,104.18 | | | **Lien Treatment** = Unaffected<br>**Arrearage** = $0.00<br>**Arrearage Treatment** = N/A |
| 3 | **Secured claim of:**<br>**Name =**<br>Deutsche Bank National<br>Trust Co.<br>(Claim 9-1)<br><br>**Collateral description =**<br>637 Lake Beulah CV<br>Winter Garden, FL 34787<br><br>**Allowed Secured Amount =**<br>$309,989.30<br><br>**Priority of lien =**<br>First<br><br>**Pre-pet. arrearage =**<br>$8,250.35<br><br>**Total claim =**<br>$309,989.30 | No | Yes | **Monthly Payment** = 2,639.12<br>**Interest Rate %** = 5.0%<br>**Lien Treatment** = Unaffected<br>**Arrearage** = $8,250.35<br>**Arrearage Treatment** = Five (5)<br>payments of $1,650.07 totaling<br>$8,250.35 at 0.00% interest<br>payable annually commencing<br>May 15, 2023. |

B. Classes of Priority Unsecured Claims.

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment. The Debtor does not have any classes containing Claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the

Code.

C.  Classes of General Unsecured Claims.

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code. The following chart identifies the Plan's proposed treatment of Class 4:

| Class # | Description | Impaired | Treatment |
|---|---|---|---|
| 4 | Advisory Trust Group, LLC $878,963.05 (Claim 1-1)[1]<br><br>Aliton's Pharmacy $2,535.87 (No Claim Filed)<br><br>Barclays Bank Delaware $2,972.00 (No Claim Filed)<br><br>Blupax Pharmaceuticals, LLC $0.00 (No Claim Filed)<br><br>Capital One $5.00 (No Claim Filed)<br><br>Citizen's Bank $6,907.58 (Claim 4-1)[2]<br><br>Northwestern Mutual $4,759.30 (No Claim Filed)<br><br>On Deck Capital, Inc. $44,286.18 (Claim 2-1)<br><br>Radius Global Solution $175.00 (No Claim Filed)<br><br>State Farm Life Insurance | Yes | **Payment Interval** = Annual<br>**Begin Date** = 05/15/2023<br>**End Date** = 05/15/2027<br>**Interest Rate %** = 0.00%<br>**Total Payment** = $500,000.00<br>**Total Claims** = $976,716.93<br>**Estimated % of Claims Paid** = 51.19%<br>Annual *pro rata* disbursements for five (5) years as follows:<br>05/15/2023: $100,000.00<br>05/15/2024: $100,000.00<br>05/15/2025: $100,000.00<br>05/15/2026: $100,000.00<br>05/15/2027: $100,000.00 |

---

[1] Debtor reserves the right to object to Claim 1-1 as set forth in Part 2.3 below.
[2] Debtor reserves the right to object to Claim 4-1 as set forth in Part 2.3 below.

| | | |
|---|---|---|
| $2,042.50<br>(No Claim Filed)<br><br>State of New Jersey<br>Division of Taxation<br>$17,179.33<br>(Claim 6-1)<br>(general unsecured portion)<br><br>Synchrony Bank<br>$129.78<br>(Claim 7-1)<br><br>Trac/CBCD/Citicorp<br>$268.00<br>(No Claim Filed)<br><br>USAA Federal Savings Bank<br>$16,493.34<br>(Claim 3-1) | | |

**D.  Class of Equity Interest Holders.**

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are Equity Interest holders.  In a partnership, Equity Interest holders include both general and limited partners.  In a limited liability company ("LLC"), the Equity Interest holders are the members.  Finally, with respect to an individual who is a debtor, the Debtor is the Equity Interest holder.

The Debtor is an individual and there are not classes of Equity Interest holders.

**2.3.   <u>Estimated Number and Amount of Claims Objections.</u>**

The Debtor may object to the amount or validity of any Claim within sixty (60) days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan.  If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.

| Class # | Number of Claims Objected To | Amount of Claims Objected To |
|---|---|---|
| 4 | Two (2) | Advisory Trust Group, LLC (Claim 1-1) ($878,963.05)<br><br>Citizens Bank, N.A. (Claim 4-1) ($6,907.58) |

**2.4.   <u>Treatment of Executory Contracts and Unexpired Leases.</u>**

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

The Debtor assumes the unexpired residential lease of his real property located in Winter Garden, FL, a copy of which is annexed as Exhibit D.

**2.5.** **Means for Implementation of the Plan.**

The Debtor will fund the Plan with his regular income for a period of sixty (60) months, as well as with contribution from family where necessary. On Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor. The Debtor expects to have sufficient cash on hand to make the payments required on the Effective Date.

**2.6.** **Payments.**

Whether the Plan is confirmed under §1191(a) or (b), payments to Creditors provided for in the Plan will be made by the Debtor pursuant to §1194(a). The Debtor shall make Plan payments as provided for in the Plan or in the order confirming the Plan.

**2.7.** **Post-Confirmation Management.**

The Debtor will manage his Plan of reorganization post-confirmation.

**2.8.** **Tax Consequences of the Plan.**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

**2.9. Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan**

Debtor has provided projected financial information. Those projections are listed in Exhibit C.

**ARTICLE 3**

**FEASIBILITY OF PLAN**

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

**3.1.    Ability to Initially Fund Plan**.

The Debtor believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date.  Tables showing the amount of cash on hand on the Effective Date of the Plan, and the sources of that cash, are attached hereto as Exhibit E.

**3.2.    Ability to Make Future Plan Payments And Operate Without Further Reorganization**.

The Debtor must submit all or such portion of the future earnings or other future income of the Debtor to the supervision and control of the Trustee as is necessary for the execution of the Plan.

The Debtor has provided projected financial information. Those projections are listed in Exhibit C (referenced in § 2.9, above).

The Debtor's financial projections show that the Debtor will have an aggregate annual average cash flow, after paying operating expenses and post-confirmation taxes, of $41,068.56. The final Plan payment is expected to be paid on May 15, 2027.

**You Should Consult with Your Accountant or other Financial Advisor If
You Have Any Questions Pertaining to These Projections.**

**ARTICLE 4**

**LIQUIDATION ANALYSIS.**

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation.  A liquidation analysis is attached hereto as Exhibit F.

**ARTICLE 5**

**DISCHARGE.**

Discharge. If the Plan is confirmed under § 1191(a), on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

If the Plan is confirmed under § 1191(b), as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2) if applicable, of the kind specified in section 523(a) of this title.

## ARTICLE 6

## GENERAL PROVISIONS.

### 6.1.   Title to Assets.

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation  of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first.  Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

### 6.2.   Binding Effect.

If the Plan is confirmed,  the provisions  of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

### 6.3.   Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**6.4.**     **Retention of Jurisdiction by the Bankruptcy Court.**

   The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear  and  allow  all applications  for  compensation  to  professionals  and  other Administrative Expenses; (iv) to  resolve  all  issues  regarding Claims  objections,  and issues arising from the assumption/rejection of executory contracts or unexpired leases, and  (v)  to  adjudicate any cause  of  action  which  may  exist  in  favor  of  the  Debtor, including preference and fraudulent transfer causes of action.

**6.5.**     **Captions.**

   The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**6.6.**     **Modification of Plan.**

   The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Plan.

   If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

   If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**6.7.**     **Final Decree.**

   Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

**ARTICLE 7**

**ATTACHMENTS**

The following documents accompany the Plan:

[X]    Debtor's Assets at Fair Market Value, annexed as <u>Exhibit A</u>.
[X]    Debtor's Liabilities, annexed as <u>Exhibit B</u>.
[X]    Financial Forecast (Projections), annexed as <u>Exhibit C</u>.
[X]    Executory Contracts and Unexpired Leases to be Assumed annexed as <u>Exhibit D</u>.
[X]    Tables showing the amount of cash on hand as of the Effective Date, and the sources of that cash, annexed as <u>Exhibit E</u>.
[X]    Liquidation Analysis, annexed as <u>Exhibit F</u>.

## ARTICLE 8

## <u>FREQUENTLY ASKED QUESTIONS</u>

**What Is the Debtor Attempting to Do in Chapter 11?**  Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?**  In order to confirm a plan of reorganization, the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?**  To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor.  If you do not have any collateral, your claim is unsecured.  The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. Section 2.2 lists all classes of claimants and their types of claims.

**Why Is Confirmation of a Plan of Reorganization Important?**  Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan.  If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization?**  Confirmation of the Plan

requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is IMPARIED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?** Section 2.2 of the Plan identifies the classes of creditors whose claims are impaired. If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned is _____, 2022. Ballots should be mailed to the following address: Middlebrooks Shapiro, P.C., 841 Mountain Avenue, First Floor, Attention: Braunagel Ballot, Springfield, New Jersey 07081.

**How Do I Determine When and How Much I Will Be Paid?** As part of this Plan, the Debtor has provided both written and financial summaries of what he anticipates each class of creditors will receive under the Plan.

## ARTICLE 9

## DEFINITIONS

**9.1.** The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only and are superseded by the definitions found in the Code.

**9.2. Administrative Claimant**: Any person entitled to payment of an Administration Expense.

**9.3. Administrative Convenience Class:** A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**9.4.  Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**9.5  Administrative  Tax  Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**9.6.  Allowed Claim**: Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.7.  Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.8.  Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.

**9.9.  Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.10.  Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.11.  Bankruptcy Court**: The United States Bankruptcy Court for the District of New Jersey.

**9.12.  Bankruptcy Rules**:  The Federal Rules of Bankruptcy Procedure.

**9.13.  Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned

thereon.

**9.14.  Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which Carl Joseph Braunagel is the Debtor-in-Possession.

**9.15  Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.16.  Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.17.  Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**9.18.  Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**9.19.  Confirmation Hearing**: The hearing to be held on _____, 2022 to consider confirmation of the Plan.

**9.20.  Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.21.  Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.22.  Debtor** and **Debtor-in-Possession**: Carl Joseph Braunagel, the debtor-in-possession in this Chapter 11 Case.

**9.23.  Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.24.  Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.25.  Effective Date**: Pursuant to D.N.J. LBR 3020-1, the effective date of a chapter 11 plan is 30 days after entry of the order confirming the plan unless the plan or confirmation order provides otherwise.

**9.26.  Equity Interest**: An ownership interest in the Debtor.

**9.27.  Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.28.  Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.29.  IRC**: The Internal Revenue Code

**9.30.  Petition Date**: January 28, 2022, the date the chapter 11 petition for relief was filed.

**9.31.  Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**9.32.  Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**9.33.  Reorganized Debtor**: The Debtor after the Effective Date.

**9.34.  Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**9.35.  Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtor.

**9.36.  Trustee**: The trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**9.37.  Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

Respectfully submitted,

**Middlebrooks Shapiro, P.C.**
841 Mountain Avenue, First Floor
Springfield, NJ 07081
973-218-6877
*jshapiro@middlebrooksshapiro.com*
Counsel for the Chapter 11 Debtor

/s/ Joseph M. Shapiro
_____
By: Joseph M. Shapiro, Esq.

Dated: April 28, 2022